UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CLARENCE D. SCHREANE,                )
                                     )
        Petitioner,                  )
v.                                   )        No. 1:13-CV-190
                                     )
HERBERT SLATERY,                     )
                                     )
        Respondent.                  )

## MEMORANDUM OPINION

Clarence D. Schreane ("Petitioner"), a pro se federal inmate, has filed two petitions for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docs. 1 and 8].  Respondent filed an answer,

as well as copies of the state record [Docs. 19 and 20].  Petitioner then filed an "objection to

Respondent's answer to petition" [Doc. 21], a motion to produce documents from the Tennessee

Supreme Court [Doc. 27], a motion to appoint counsel [Doc. 31], and a motion "for abuse of

discretion for the deprivation of counsel reversal" [Doc. 36].  For the reasons set forth below,

Petitioner's § 2254 petitions [Docs. 1 and 8] will be **DENIED**, Petitioner's motion to appoint

counsel [Doc. 31], motion to produce documents from the Tennessee Supreme Court [Doc. 27],[1]

and motion for "abuse of discretion for the deprivation of counsel reversal" [Doc. 36] will be

**DENIED as moot**, and this action will be **DISMISSED**.

## I.      PROCEDURAL HISTORY

A jury convicted Petitioner of first degree felony murder and aggravated robbery, for

which he received consecutive sentences of life imprisonment and sixty years of incarceration,

---

[1] In this motion, Petitioner sought documents from his underlying criminal proceedings in
order to allow the Court to review them.  As Respondent previously provided all such documents
to the Court, however, this motion was unnecessary.

respectively.  *State v. Schreane*, No. E2005-0520-CCA-R3-CD, 2006 WL 891394, at *1 (Tenn. Crim. App. April 5, 2006), *perm. app. denied* (Aug. 28, 2006).  Petitioner's convictions were affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA"), and the Tennessee Supreme Court denied permission to appeal.  *Id.*

The trial court denied Petitioner's petition for post-conviction relief, the TCCA affirmed this denial, and the Tennessee Supreme Court denied permission to appeal.  *Schreane v. State*, No. E2009-01103-CCA-R3-PC, 2010 WL 3919264 (Tenn. Crim. App. Oct. 7, 2010) *perm. app. denied* (Jan. 18, 2011).

Petitioner next filed a petition for writ of error coram nobis, which the trial court denied. The TCCA affirmed this denial, and the Tennessee Supreme Court denied permission to appeal. *Schreane v. State*, No. E2012–01202–CCA–R3–PC, 2013 WL 173193 (Jan. 16, 2013), *perm. app. denied* (May 7, 2013), *petition to rehear denied* (June 4, 2013).

Petitioner then filed a motion to reopen his post-conviction proceedings, which the trial court alternatively construed as another petition for a writ of error coram nobis.  The trial court denied this motion, the denial was affirmed on appeal, and the Tennessee Supreme Court denied permission to appeal.  *Schreane v. State*, No. E2012–00954–CCA–R3–CO, 2013 WL 5516430 (Tenn. Crim. App. Oct. 2, 2013), *perm. app. denied* (Oct. 2, 2013).

Petitioner also filed a motion to dismiss his indictment with the trial court, which the trial court construed as a petition for state habeas relief.  This petition was denied, and the denial was affirmed on appeal.  *Schreane v. State*, No. E2013–1161–CCA–R3–HC, 2013 WL 6229527 (Tenn. Crim. App. Dec. 2, 2013).

## II.     BACKGROUND

The following factual background is taken from the TCCA's opinion on direct appeal of

Petitioner's conviction:

> This case relates to [Petitioner's] participation in the killing of
> Marcus Edwards on September 19, 1991. The Chattanooga Police
> Department investigated the murder; however, the case went cold
> and remained unsolved for eight years. In 1999, [Petitioner] was
> incarcerated on unrelated charges when he contacted Chattanooga
> Police Department detectives and told them he had information
> related to the unsolved 1991 murder. The detectives had
> [Petitioner] brought to their location to speak with him, and after a
> period of a few hours, [Petitioner] confessed.
>
> At the trial, the evidence showed that [Petitioner] accompanied
> Charles Turner to the victim's place of business to help Mr. Turner
> commit a robbery. As the victim was talking to Mr. Turner,
> [Petitioner] struck the victim with a rock, and Mr. Turner then
> shot the victim with a .38 caliber handgun. Mr. Turner took the
> victim's .357 magnum handgun, which was on the victim's body.
> Mr. Turner also took a cigar box containing cash and gave
> [Petitioner] one hundred dollars as both men fled the scene in
> [Petitioner's] 1983 Cadillac Eldorado.
>
> Before the trial, [Petitioner] filed a motion to suppress his
> confession, arguing that it was taken in violation of his Fifth and
> Fourteenth Amendment rights. At the motion to suppress hearing,
> Chattanooga Police Department Detective Mike Mathis testified
> that he was the lead investigator for the 1991 murder. He said the
> victim was shot to death and found in his business. Detective
> Mathis said few solid leads developed until [Petitioner] contacted
> them.
>
> Detective Mathis said that sometime before September 19, 1999,
> Chattanooga Police Department Lieutenant Steve Angel had been
> receiving collect telephone calls from the Hamilton County Jail,
> which he was unable to answer. He said that [Petitioner's]
> "significant other" contacted the detectives and told them
> [Petitioner] wanted to talk to them about an unsolved murder. He
> said [Petitioner] also called and spoke with Lt. Angel and told him
> enough specific information about the murder to cause Lt. Angel to
> have [Petitioner] transported from the Hamilton County Jail to the
> police service center.

Detective Mathis said he conducted an interview with [Petitioner], culminating in a tape-recorded statement. He said that although [Petitioner] was in custody on unrelated charges, he was not under arrest or charged with the victim's murder when he confessed. Detective Mathis said he did not promise [Petitioner] anything in return for his confession. Detective Mathis said [Petitioner] waived his constitutional right to remain silent and to an attorney before making the tape-recorded statement.

On cross-examination, Det. Mathis said he talked with [Petitioner] for some period of time before reading him his *Miranda* rights. He admitted that before he arrived to interview [Petitioner], Lt. Angel had been talking to [Petitioner]. Detective Mathis said that although he did not promise [Petitioner] anything specific in return for his confession, he did explain to [Petitioner] that he would tell the district attorney general's office that [Petitioner] had come forward on his own and cooperated with the police. Detective Mathis admitted that he may have told [Petitioner] he would try to help transport [Petitioner] from the Hamilton County Jail to Silverdale, a state correctional facility.

On redirect examination, Det. Mathis said [Petitioner] initiated the contact with the police department. Detective Mathis explained that the reason for the delay in reading [Petitioner] his *Miranda* rights was [Petitioner] initially maintained that he had only heard about the murder, not that he had any involvement in it. He said [Petitioner] ultimately "came clean" and confessed.

[Petitioner] testified that when he first arrived at the police service center, he was placed in an interview room with Det. Carroll and Det. Mathis. He said Lt. Angel entered the room later. [Petitioner] said Det. Mathis told him he believed "the bicycle bandit" was responsible for the victim's murder. [Petitioner] said that he then asked to speak with his attorney but that Det. Mathis told him he did not need an attorney. [Petitioner] said Det. Mathis made promises to him before the taping began. He said Det. Mathis promised him that [Petitioner] would not be charged with the murder, that Det. Mathis would speak with [Petitioner's] parole officer in another case, and that Det. Mathis would speak with the district attorney general's office in order to have them dismiss certain charges against [Petitioner] from another case in return for [Petitioner's] cooperation. He said Det. Mathis also promised to transfer him from the Hamilton County Jail to Silverdale. [Petitioner] said he was transferred to Silverdale two days later. [Petitioner] said he did not sign the waiver form until after the taped statement was made.

After considering the evidence and the arguments of counsel, the trial court denied [Petitioner's] motion to suppress. It stated:

> Even on your motion, I can base all of my findings on what Mathis and the statement says . . . .The initial contact came not from the police to [Petitioner] but from someone on [Petitioner's] behalf and then later by [Petitioner] to the police. [The police] would have been derelict in their duty not to see what [Petitioner] had to say about it, something like this. So they bring him out there and talk with him.
>
> Now, as far as the requirements for Miranda warnings, you have to be in custody and subject to interrogation. He was in custody but certainly not on this and not by these officers on this. So I don't think that it actually applies in this situation.
>
> The fact that he is in custody on something else doesn't mean for Miranda purposes he wasn't in custody on this.
>
> He also made the initial contact. Certainly they questioned him after he gave them some information but I find from the transcript itself and the conversation between Mr. Mathis at the very beginning of the tape, he says, "Prior to taking this statement I advised you of your constitutional rights and did you understand these." [Petitioner] says, "Yes, he did."
>
> Mathis says, "Am I correct in saying that as I started to advise you of them, you basically recited them to me, did you not?" [Petitioner] said, "Yes."
>
> Mathis says, "And I mean you read-told me what your rights were without even looking at that form, you knew your rights, is that correct?" [Petitioner] says, "Yes."
>
> Mathis says, "And you have signed this rights waiver agreeing to talk to us today." "Yes." "And that's your signature that I'm pointing to on this rights form." [Petitioner] says, "Yes."

5

It's incredible to believe that the rights waiver got signed after the taped statement when they discuss it prior to even questioning on the tape, so that's totally unbelievable.

. . . .

Now, I don't believe that [Petitioner] walked in there, signed the waiver, and started this. I think he had probably been there a while. He probably got there before midnight and had been talking to some of them and talking to them about things and as they decided they had information they needed to use, they read him rights waiver and did the tape. There is really nothing wrong with it. He made a knowing and voluntary statement to the police. It was not made during the course of negotiations or settlement of this case. He obviously wanted good treatment and was looking out for himself, no doubt about that, that happens all the time. There was nothing improper about this. The motion to suppress the confession is overruled.

At the trial, the jury convicted [Petitioner] as charged. [Petitioner] filed a motion for new trial, and at the ensuing hearing, [Petitioner] called Clyde Edwards, the victim's father, who testified that either the police or the district attorney's office told him that the state was going to offer the defendant a sentence of life imprisonment. Mr. Edwards said, "I told them I didn't care if [Petitioner] didn't get but two years, as long as he didn't get out of the pen." Mr. Edwards maintained that he did not remember who told him about the proposed offer. Thereafter, the trial court denied the defendant's motion for new trial.

*Schreane*, 2006 WL 891394, at *1–3.

The following summary of the factual background is taken from the TCCA's opinion affirming the trial court's denial of Petitioner's post-conviction relief for his convictions:

At the post-conviction hearing, the Petitioner's trial counsel testified that he had practiced criminal defense for nine years. He said that he conducted three or four trials before the Petitioner's trial but that this was his first murder trial.

Trial counsel agreed that the Petitioner confessed in January 1999 and was arraigned in March 2003. He said that the delay between the confession and the arraignment did not bother him because it was not an unnecessary delay. He said that the police tried to verify the Petitioner's statements during this time and that the police were investigating two suspects, the Petitioner and Charles Edward Turner, and wanted to "be sure they had the right people." Trial counsel also stated that the delay did not bother him because it did not prejudice the Petitioner, there being no loss of evidence or witnesses. He said the Petitioner was already in jail for twenty-five years for a federal conviction and suffered no additional loss of liberty due to the delay. He did not believe that the police delayed to gain a tactical advantage over the Petitioner. Trial counsel said that he and an assistant each spent several hours researching whether the delay violated the Petitioner's due process rights and determined that it did not. As a result, trial counsel did not seek to dismiss the indictment on due process grounds.

Trial counsel testified that both he and the Petitioner researched the Interstate Compact on Detainers. He said that he spoke with the district attorney's office to determine what motions were filed to enable the transfer of the Petitioner between federal and state custody. He also spoke with the head of the federal defender's office to determine if the Compact was violated. He was told that the Compact did not apply because the transfer to state custody was achieved by writ of habeas corpus ad prosequendum rather than by detainer. He said that further research by an assistant confirmed that the Compact was not applicable because all transfers were achieved by writ and not by detainer. He said that he told the Petitioner the Compact did not apply. He said that a later transfer between federal and state custody did not violate the Compact because the trial was held within 120 days of the second transfer.

The Petitioner testified that he first met trial counsel at his arraignment. He said that he and counsel met "maybe twice" before trial. He said he appeared at the Hamilton County trial after being transferred to state custody pursuant to a writ of habeas corpus ad prosequendum.

The Petitioner testified that he spoke with the Chattanooga police but that he "didn't initiate the first call." He said that he met with two detectives and that he told them he wanted an attorney present during the questioning. He said that the detectives responded by stating he did not need an attorney and that they "totally avoided"

his request. He said the conversation continued after his request for an attorney.

Chattanooga Police Officer Mike Mathis testified that he met with the Petitioner at the police department. He said that there was no problem informing the Petitioner of his rights and that the Petitioner signed a waiver of his rights. He said the Petitioner did not ask to have an attorney present.

Officer Mathis testified that he "did a lot of things to corroborate" the Petitioner's statement and confession. He said that he had to locate a witness, Phillip Joliff, and that after a lengthy process, he found the witness in Ohio. He said that he investigated the codefendant, Mr. Turner, and that he worked "to get both the subjects that were responsible for this murder." He said he used information obtained from the Petitioner to investigate Mr. Turner because the Petitioner "was cooperating with us and was preparing with us to testify on our behalf against Mr. Turner."

On cross-examination, Officer Mathis testified that the Petitioner initiated the contact with police. He said that the initial conversation with the Petitioner was "not an interview or an interrogation. We're just talking." He said that he felt the Petitioner was guilty of a crime "very early" in the conversation but that he did not immediately charge the Petitioner because "[the Petitioner] was in custody for something else. He wasn't going anywhere. He was cooperating with us."

Officer Mathis testified that the delay between the Petitioner's confession and the indictment was due to efforts to investigate and corroborate the information obtained from the Petitioner. He said that the case was already eight years old and that it took time to locate and interview Mr. Joliff, who was "basically homeless and traveling all over the country." He said that it also took time to arrange a meeting with Mr. Turner, who was in federal custody in Indiana. He said that the investigation "progressively went on and on," and that they did not finish the investigation and then "just sit on it."

With regard to the Petitioner's claim of a due process violation caused by the pre-arrangement delay, the trial court accredited the testimony of Detective Mathis, noting that the delay was caused by the need to corroborate the Petitioner's statements and the need to locate witnesses. However, the court also stated, "whether they account for all or only part of the delay is not clear, the detective not testifying about dates or time." With regard to the Petitioner's

8

statement to police, the trial court found that the evidence introduced at the post-conviction hearing added nothing to the proof previously introduced at the suppression hearing and noted that this court affirmed the result of that suppression hearing on direct appeal.

*Schreane*, 2010 WL 3919264, at *3–5.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq*., a court considering a habeas claim must defer to any decision by a state court concerning the claim, unless the state court's judgment: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2).

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be.'" (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness, which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

Petitioner's § 2254 habeas corpus petitions [Docs. 1 and 8] raise five main grounds for relief:

(1) The trial court should have suppressed his confession because:

(a) He requested an attorney soon after arriving at the police station;

9

(b) Police interrogated him while he was in custody prior to reading him his rights under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("*Miranda*"); and

(b) His confession was improperly induced by promises from prosecutors.

(2) Prosecutors violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to provide him with their entire file, as it could have contained exculpatory evidence;

(3) The testimony of Detective Mathis regarding Petitioner's record of prior "drug cases" was perjured and the prosecution knowingly used this false testimony;

(4) The indictment should have been dismissed because the grand jury did not know about constitutional violations before confession; and

(5) His prosecution violated Article IV(e) of the Interstate Agreement on Detainer Act.

In his response to the petition, Respondent asserts that Petitioner is not entitled to relief as to his claims for suppression of his confession because the state court reasonably found that Petitioner initiated the conversation with police [Doc. 19]. Respondent also asserts that Petitioner is not entitled to relief on his claims relating to defective indictment and the Interstate Agreement on Detainer Act because they were procedurally defaulted[2] and/or the state court reasonably determined that the claims were without merit [*Id.*]. Respondent did not address the other claims Petitioner raised in his original petition.[3]

---

[2] As ineffective assistance of counsel may establish cause for procedural default where a petitioner presented a claim of ineffective assistance of counsel relating to the allegedly defaulted claims, *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000), as Petitioner did in this case, the Court will address these claims on the merit.

[3] Petitioner's original petition [Doc. 1] set forth Petitioner's claims relating to suppression of his confession, his *Brady* violation claim, and his claim regarding the trial court's duty regarding admission of his confession. As this petition was unsigned, however, the Court directed Petitioner to file a signed petition [Doc. 4], and Petitioner complied. The signed petition Petitioner filed [Doc. 8] included his claims relating to suppression of his confession and added claims regarding dismissal of the indictment and the Interstate Agreement on Detainer Act, but did not address the claims relating to *Brady*, Detective Mathis's testimony, or dismissal of the indictment. Accordingly, it appears that Respondent disregarded the original petition in drafting his response. The Court, however, liberally construes Petitioner's filings and finds that the signed petition [Doc. 8] corrected the deficiencies in the original unsigned petition [Doc. 1] and the Court will therefore address the claims for relief set forth in these petitions.

A.  **Suppression of Petitioner's Confession**

Petitioner asserts that the state court erred in finding that his confession was not subject to suppression because officers did not ever fully inform him of his *Miranda* rights or, alternatively, did not do so early enough.  Petitioner also asserts that the trial court erred in not suppressing his confession because it was obtained in violation of his Fifth Amendment right to counsel, as Petitioner requested to confer with an attorney soon after he arrived at the station, and that his confession was involuntary because officers induced him to confess by making certain promises. As the state court reasonably held that Petitioner was not in *Miranda* custody prior to officers providing him *Miranda* rights and that Petitioner's confession was voluntary, Petitioner is not entitled to relief under § 2254 for this claim.[4]

First, as to Petitioner's assertion that officers did not provide him with complete *Miranda* rights, the state court held that officers informed Petitioner of his *Miranda* rights and obtained Petitioner's signature on a written waiver of *Miranda* rights prior to any custodial interrogation. The record establishes that, in the taped statement in which Petitioner confessed to his role in the Edwards murder, Petitioner acknowledged that he had signed a document in which he waived all of his *Miranda* rights [Addendum 1, Vol. 3, p. 92; Addendum 1, Vol. 6, Exhibit 28].  While Petitioner later disputed whether he had actually signed the waiver prior to the taped statement at the pretrial suppression hearing, the trial court found that this testimony was "incredible" [Addendum 1, Vol. 2, p. 26–26, 40].  Petitioner has not provided any clear and convincing

---

[4] Petitioner makes a related argument that the trial court erred and violated 18 U.S.C. § 3501 by not reviewing the taped statement in which Petitioner confessed to his role in the Edwards murder outside of the presence of the jury to determine whether the confession was voluntary prior to admitting it as evidence at trial.  The statements upon which Petitioner relies for this claim are taken not from trial, however, but rather from the pretrial suppression hearing wherein the trial court expressly found that Petitioner's confession was voluntary, and Petitioner is not entitled to § 2254 relief for this claim.

evidence to rebut the state court's factual determination that he did receive full *Miranda* rights prior to the taped statement in which he confessed to his role in the Edward murder, and Petitioner is therefore not entitled to relief under § 2254 for this claim.

As to Petitioner's other arguments regarding suppression of his confession, the Fifth Amendment guarantees that an individual has the right to not be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Accordingly, the Supreme Court has held that any suspect must be informed of his Fifth Amendment right against self-incrimination, among other rights, prior to custodial interrogation by police. *Miranda v. Arizona*, 384 U.S. 436, 478–89. Incriminating statements from a suspect subjected to custodial interrogation without *Miranda* rights are not admissible at trial. *United States v. Patane*, 542 U.S. 630, 631 (2004).

No one appears to dispute that Petitioner was subjected to interrogation prior to being informed of his *Miranda* rights. The issue, therefore, is whether that interrogation was custodial such that police where required to inform Petitioner of his *Miranda* rights. *Miranda* defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. The Supreme Court has stated that, at the time the state court determined that Petitioner was not in *Miranda* custody prior to receiving *Miranda* rights, the Supreme Court had not established a categorical rule as to whether police questioning of a prison inmate is custodial. *Howe v. Fields*, 132 S.Ct. 1181, 1187–88 (2012). The Supreme Court has now held, however, that where officers take an incarcerated individual aside for questioning, such questioning is not necessarily custodial and police therefore are not automatically required to inform the prisoner of his *Miranda* rights. *Id.* at 1189–91.

Accordingly, where police take incarcerated individuals aside for questioning, courts must determine whether police were required to inform the individual of his *Miranda* rights by examining the circumstances of the questioning to determine if they created a "serious danger of coercion." *Id.* at 1189. In making this determination, courts should first ascertain whether a reasonable person in the suspect's position would have felt that he was free to end the interrogation and leave. *Id.* Courts should focus on all features of the interrogation, including the location of the questioning, the length of the questioning, statements made during questioning, whether the suspect was restrained during questioning, and whether the suspect is released after the questioning. *Id.*

The state court relied on the fact that Petitioner initiated contact with police to find that Petitioner was not subjected to custodial interrogation prior to police informing him of his *Miranda* rights. *State v. Schreane*, No. E2005-00520-CCA-R3CD, 2006 WL 891394, at *4–5 (April 5, 2006). The state court did not analyze, however, whether Petitioner's request to confer with counsel, which the state court found Petitioner made very soon after the discussion began, represented Petitioner withdrawing his initiation of the discussion until after he conferred with counsel. The state court further did not analyze whether Petitioner's request for counsel and officers' failure to honor that request would support a finding that police, rather than Petitioner, initiated the discussion about the Edwards murder that followed the request for counsel. Accordingly, the state court's reasoning on this issue appears incomplete to the Court.

Nevertheless, the Court finds that, even if police initiated the discussion that followed Petitioner's request for counsel, the totality of the circumstances of that discussion did not create a "serious danger of coercion," and Petitioner therefore was not in *Miranda* custody prior to being informed of his *Miranda* rights. *Howe*, 132 S.Ct. at 1189. As the state court's finding that

Petitioner's confession was voluntary and not subject to the exclusionary rule had a reasonable basis, Petitioner is not entitled to § 2254 relief on this claim. *See Holland v. Rivard*, __ F.3d __, 2015 WL 5011071, at *9 (6th Cir. Aug. 25, 2015) (citing *Harrington v. Richter*, 562 U.S. 86, 98 (2011) as support for holding that federal courts should determine whether any reasonable basis existed for the state court to deny relief).

Taken together, the circumstances of the discussion of the Edwards murder establish that a reasonable person in Petitioner's position would have felt that he could terminate the discussion. The Edwards murder occurred eight years before the discussion, Petitioner had not been questioned about the murder during those eight years, and Petitioner initiated the discussion with police about the murder[5] [Addendum 1, Vol. 3, p. 73–83, 121]. Officers began the discussion by indicating that they believed that the "bicycle bandit" had committed the Edwards murder, Petitioner then indicated that he wanted to confer with a lawyer,[6] and officers told

---

[5] In his § 2254 petition, Petitioner asserts that he did not make any calls to police. Petitioner's sworn testimony to the trial court at both the pretrial suppression hearing and at the post-conviction hearing, however, was that, while someone else initially contacted police on his behalf, Petitioner made the call to police on the day that he was taken to the police station for questioning [Addendum 1, Vol. 2, p. 25–30; Addendum 3, Vol. 2, p. 25–26]. Petitioner further specifically stated in his memorandum in support of his petition for post-conviction relief that he initiated contact with police to discuss the Edwards murder [Addendum 3, Vol. 1, p. 30]. Accordingly, Petitioner's new assertion that he did not initiate any contact with police is directly contradicted by Petitioner's own statements in the record, and Petitioner has not presented any clear and convincing evidence to rebut the state court's factual finding that Petitioner initiated the discussion with police about the Edwards murder by calling them.

[6] While the Court has found nothing in the state court record that conclusively states the identity of the "bicycle bandit," the fact that Charles Turner is the only other named suspect in the record strongly suggests that police were referring to Charles Turner when they told Petitioner that they suspected the "bicycle bandit" had committed the Edwards murder. Petitioner's confession implicated both Petitioner and Charles Turner in the Edwards murder, and Petitioner immediately requested a lawyer after police stated that they suspected the "bicycle bandit." Thus, if the Court is correct about Turner being the "bicycle bandit," these facts would weigh in favor of finding of *Miranda* custody.

14

Petitioner that he did not need a lawyer because they were just going to ask him a few questions [Addendum 1, Vol. 2, p. 23].

While police questioned Petitioner for more than four hours before informing him of his *Miranda* rights, there is no indication that Petitioner was restrained at any point during the questioning, and Petitioner recited his *Miranda* rights from memory prior to police advising him of those rights [Addendum 1, Vol. 3, p. 92]. It is therefore clear that Petitioner understood at all times during the discussion about the Edwards murder that he had the right to remain silent, and this fact supports finding that Petitioner knew that he could end the discussion and terminate the interview prior to the time that officers provided him with *Miranda* rights.

Further, Detective Mathis testified that officers never browbeat Petitioner, but instead were "all ears" during the discussion [Addendum 1, Vol. 3, p. 89]. While Detective Mathis testified at trial that he immediately realized that Petitioner was telling officers things that only someone involved in the murder would know, Petitioner was not arrested for his role in the Edwards murder even after his confession, but rather was released back to the same jail in which he had been incarcerated prior to the questioning [Addendum 1, Vol. 2, p. 23; Addendum 1, Vol. 3, p. 85–88]. Petitioner was not indicted for the Edwards murder until approximately three years after the questioning [Addendum 1, Vol. 1, p. 3].

Petitioner asserts that his confession was involuntary because officers made him certain promises. The state court, however, reasonably determined that the promises officers made to Petitioner did not overbear Petitioner's will and force him to confess. Specifically, the state court found that officers promised Petitioner that, in exchange for his cooperation with them, they would tell the district attorney's office that Petitioner had cooperated, that they would attempt to secure a transfer for Petitioner from county jail to Silverdale, and that they would

15

allow Petitioner to see his girlfriend. As such, the state court impliedly found that the record did not support Petitioner's assertion that officers also promised him that he would not be charged with the Edwards murder, that they would talk to the district attorney about resolving or dropping Petitioner's state charges, or that Petitioner's parole would be reinstated. The state court also specifically found that Petitioner had not established that any promise of a life sentence was made by the relevant officers for purposes of coercing a confession.

Petitioner has not presented any clear and convincing evidence to rebut the state court's factual findings as to the promises made by officers, and the state court correctly applied federal law to find that those promises did not render Petitioner's confession involuntary. *Rogers v. Richmond*, 365 U.S. 534, 544 (1961) (holding that the ultimate issue as to voluntariness of a confession is whether police behavior "was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined"); *Colorado v. Connelly*, 479 U.S. 157, 163–65 (holding that, for a confession to be found involuntary, there must be evidence of coercive state conduct). Further, the promises officers made to Petitioner in exchange for his cooperation only dealt with certain aspects of his incarceration, and not its duration. *Howe*, 132 S.Ct. at 1191 (finding that where a prisoner has no reason to think that the officers questioning him have official power over him, including specifically the duration of his sentence, he has no reasonable basis for assuming that he will get more lenient treatment if he confesses). Thus, while these promises may have encouraged Petitioner's cooperation with police based on his hope for better conditions of incarceration, they would not have compelled him to confess. Accordingly, Petitioner is not entitled to § 2254 relief based on these promises, and the Court finds that they weigh slightly in favor of finding *Miranda* custody.

While the Court is somewhat troubled by Petitioner's early request for counsel, the officers' failure to honor that request, the fact that officers questioned Petitioner for four hours prior to informing him of his *Miranda* rights, and the promises officers made to Petitioner in exchange for his cooperation, the other circumstances of the discussion support finding that Petitioner was not in *Miranda* custody prior to receiving *Miranda* rights, especially the fact that Petitioner initiated the discussion eight years after the murder. Further, the Court has not found any Supreme Court case that is directly contrary to the state court's decision, or a Supreme Court case that the state court unreasonably applied. *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Accordingly, the Court finds that the circumstances of Petitioner's discussion with police about the Edwards murder, weighed together, support a finding that a reasonable person in Petitioner's position would have felt that he could terminate the interview and leave during the portion of the discussion that preceded *Miranda* rights, and that Petitioner was therefore not in *Miranda* custody prior to the time that he received *Miranda* rights.

An individual who is not in *Miranda* custody "has no constitutional right to counsel." *United States v. Malcolm*, 435 Fed. App'x 417, 420 (6th Cir. 2011) (finding that suspect who mentioned speaking to counsel was not "in custody" for *Miranda* purposes and was therefore not entitled to counsel under *Miranda*); *Edwards v. Arizona*, 451 U.S. 477, 485–86 (1981) (holding that there is no infringement of the right to counsel absent custodial interrogation). Accordingly, the state court reasonably determined that officers' failure to honor Petitioner's request for counsel did not violate Petitioner's right to counsel, and that Petitioner therefore was not entitled to suppression of his confession on this ground.

Petitioner is therefore not entitled to § 2254 relief on his claim that the trial court should have excluded his confession at trial. As the Court finds that this claim warrants further review, however, the Court will grant Petitioner a Certificate of Appealability ("COA") for this claim.

## B. Brady Violation

Petitioner next argues that his conviction violated his constitutional rights because prosecutors violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing all evidence in their files to Petitioner prior to trial to allow Petitioner to determine whether any information therein may have been helpful to his defense. Petitioner specifically argues that prosecutors did not provide him with tapes of prosecutors' interviews with prior suspects and notes from those interviews prior to trial, and that these tapes and notes could have provided Petitioner with facts that he could have used to cross examine state witnesses at trial, including the identification of suspects and what occurred at the crime scene.

Petitioner brought this *Brady* claim in his petition for writ of error coram nobis only as to the tapes. Specifically, in his coram nobis petition, Petitioner asserted that he found the tapes in his appellate case file and could not review them, but that they might include relevant statements from other individuals. To the extent that Petitioner's § 2254 petition makes additional *Brady* claims, Petitioner has not fully exhausted his state remedies as to those additional claims despite having the opportunity to do so, and any such claims are procedurally defaulted due to the lack of any further state remedies. The Court will therefore not address those claims. 28 U.S.C. § 2254(b).

The coram nobis court found that the tapes did not support Petitioner's assertion that officers had made him promises or otherwise establish that Petitioner's confession was involuntary and that, even if the tapes contained new evidence, that evidence would not have

changed the result of Petitioner's trial in light of Petitioner's confession and the lack of any arrest resulting from the tapes, and the appellate court affirmed these findings. *Schreane v. State*, No. E2012-01202-CCA-R3-PC, 2013 WL 173193, at *7–8 (Jan. 16, 2013). Petitioner has not set forth any facts from which the Court could find that the tapes he discovered in his appellate file were suppressed by the prosecution or were material to his guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Rather, Petitioner argues that prosecutors should have turned over all evidence in their file, without regard for materiality, so that Petitioner could determine whether any such evidence was exculpatory. Petitioner does not cite any clearly-established federal law to support this argument, and federal law does not support this argument. *Id.* Petitioner further has not demonstrated that any evidence from the prosecutor's file could establish that he did not receive a fair trial or undermine confidence in the jury's verdict, especially in light of Petitioner's voluntary confession to his role in the Edwards murder. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) (finding that a defendant must show that a violation of *Brady* resulted in prejudice to be entitled to relief on such a claim).

Accordingly, the state court reasonably determined based on the facts before it that Petitioner was not entitled to relief on this claim. Petitioner is therefore not entitled to § 2254 relief on this claim.

### C. Mathis Testimony

Petitioner next asserts that Detective Mathis wrongfully testified that Petitioner had drug convictions, and that this testimony represents the knowing use of false testimony that could have somehow affected the jury. While Petitioner correctly asserts that a prosecution's knowing use of false or perjured testimony may amount to denial of due process under circumstances where such testimony could affect the jury's verdict, *Brooks v. Tennessee*, 626 F.3d 878, 894–95

(6th Cir. 2010), the testimony Petitioner cites for this claim occurred at the pretrial suppression hearing, not at trial [Addendum 1, Vol. 2, p. 7–8]. Accordingly, this testimony could not have affected the judgment of the jury or otherwise violated Petitioner's due process rights, and Petitioner is not entitled to § 2254 relief for this claim.

### D. Dismissal of Indictment

Petitioner next asserts that his indictment should be dismissed, as the grand jury did not know about constitutional violations which led to Petitioner's confession. As this Court has previously informed Petitioner, the exclusionary rule which prevents introduction of evidence obtained in violation of the privilege against self-incrimination does not apply in grand jury proceedings. *United States v. Calandra*, 414 U.S. 338, 346, 351–55 (1974). Thus, even if the grand jury was not informed of these alleged constitutional violations, Petitioner would still not be entitled to relief on this claim. *Id.*; *see also United States v. Markey*, 693 F.2d 594, 596 (6th Cir.1982) (holding that that the "validity of an indictment is not affected by the type of evidence presented to the grand jury, even though that evidence may be incompetent, inadequate, or hearsay"). Further, the Court has now found that no constitutional violations preceded Petitioner's confession. Accordingly, Petitioner is not entitled to § 2254 relief on this claim.

### E. Interstate Agreement on Detainer Act

Petitioner next requests that the Court dismiss the indictment based on an alleged violation of Article IV of the Interstate Agreement on Detainer Act ("IAD"). Petitioner raised this claim in his petition for post-conviction relief in the form of a claim for ineffective assistance of counsel, in which Petitioner argued that counsel was ineffective for not seeking dismissal of the indictment under the IAD. The state court held that, as Petitioner was transferred pursuant to writ of habeas corpus *ad prosquendum*, the IAD did not apply to

Petitioner. *Schreane v. State*, No. E2009-01103-CCA-R3-PC, 2010 WL 3919264, at *7–8. Petitioner has not presented clear and convincing evidence to rebut the state court's factual finding on this issue, and the state court reasonably applied clearly-established federal law in holding that Petitioner was not entitled to relief on this claim. *United States v. Mauro*, 436 U.S. 340, 361 (1978) (holding that "a writ of habeas corpus *ad prosquendum* is not a detainer for purposes of the [IAD]). Accordingly, Petitioner is not entitled to § 2254 relief on this claim.

## V.     CONCLUSION

For the reasons set forth above, the Court finds that none of Petitioner's claims warrant issuance of a writ. Therefore, Petitioner's petitions for a writ of habeas corpus [Docs. 1 and 8] will be **DENIED** and this action will be **DISMISSED.**

## VI.     CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a COA, should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

After reviewing each of Petitioner's claims, the Court finds that Petitioner has made a substantial showing of the denial of a constitutional right on his claim that his confession should have been excluded from trial due to the denial of his request for counsel and the length of time Petitioner was questioned prior to officers informing him of his *Miranda* rights, and that

reasonable jurists could conclude that the issue deserves further review.  Accordingly, a COA

will issue only on this claim and the Court will **GRANT** Petitioner leave to proceed *in forma*

*pauperis* on appeal.

      **ENTER**:


                               */s/ Harry S. Mattice, Jr.*
                                HARRY S. MATTICE, JR.
                                UNITED STATES DISTRICT JUDGE